

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00680-CV

**IN THE INTEREST OF S.P.**, E.P.-M., and C.M. Jr.

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02655
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Karen Angelini, Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  March 11, 2015

AFFIRMED

This is an appeal from a judgment terminating parental rights regarding minor children S.P. (born in 2002), E.P.-M. (born in 2011), and C.M. Jr. (born in 2013).[1]  The trial court terminated the parent-child relationship between Christopher and E.P.-M. and C.M. Jr., and that between Joseph and S.P.  Christopher and Joseph appealed separately.  Each father challenges the sufficiency of the evidence supporting the trial court's findings that termination of their parental rights was in their respective children's best interest.  We affirm.

---

[1] To protect the identity of the minor children, we refer to the children's parents by their first names and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

In November 2013, the Department of Family and Protective Services filed a petition seeking to terminate the parental rights of Andrea and her children's fathers, Christopher and Joseph. The Department sought and received temporary managing conservatorship, and the children were placed with a maternal aunt. After trial, the trial court terminated the rights of all parents, and the fathers now appeal.

## STANDARDS OF REVIEW

A judgment terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine whether this heightened burden of proof was met, we employ a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). We do not reweigh issues of witness credibility but defer to the factfinder's reasonable determinations of credibility. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

A legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id.*

When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The evidence is factually insufficient "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

## THE CHILDREN'S BEST INTEREST

The best-interest determination is a wide-ranging inquiry, and the Texas Supreme Court has set out some factors relevant to the determination:

- the desires of the child;
- the emotional and physical needs of the child now and in the future;
- the emotional and physical danger to the child now and in the future;
- the parental abilities of the individuals seeking custody;
- the programs available to assist these individuals to promote the best interest of the child;
- the plans for the child by these individuals or by the agency seeking custody;
- the stability of the home or proposed placement;
- the acts or omissions of the parent which may indicate that the existing parent–child relationship is a proper one; and
- any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976). The list is not exhaustive, and not every factor must be proved to find that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest—especially when undisputed evidence shows that the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an act or omission occurred in the past does not *ipso facto* prove that termination is currently in the child's best interest." *In re O.N.H.*,

401 S.W.3d at 684 (internal citation omitted). However, a factfinder may measure a parent's future conduct by his or her past conduct in making the best-interest determination. *Id.*

### Best Interest of E.P.-M. and C.M. Jr.

Christopher, the father of E.P.-M. and C.M. Jr., argues the evidence is insufficient because there was no evidence of any "child's best interest" factor except for allegations of sexual abuse and a Department caseworker's conclusory testimony that the children were "doing well" with their aunt. We disagree. Rosemary Flores, a Department caseworker, testified S.P. made an outcry that Christopher was sexually inappropriate with her. Flores testified "[S.P.] said that [her] mom would go to work at night, and when [she] would go to work, . . . [Christopher] would come to her, into her room, and sexually abuse her." Flores further testified S.P. explained Christopher "would ejaculate on her breasts, he would ejaculate in her mouth and he would fondle her body." Flores testified S.P. stated "this happened every night." According to Flores's testimony, S.P. made an outcry because Christopher would go into E.P.-M.'s bedroom and lock the door, and S.P. did not want her younger sister to be abused like she was. Flores testified she spoke with Christopher about the case during her investigation, and he admitted to the conduct alleged by S.P.

In addition to the above-described evidence, Allysa Ford, a Department caseworker, testified the children's placement with their aunt was a long-term placement with the possibility of adoption. Ford explained E.P.-M. was in therapy along with S.P., and placement with the aunt would enable them to continue therapy. She also testified the children's aunt had bonded with the children, would protect them, and would provide for their needs in the future. Having reviewed the entire record, we hold the evidence is sufficient to reasonably form a firm conviction or belief that termination of Christopher's parental rights is in E.P.-M.'s and C.M. Jr.'s best interest.

*Best Interest of S.P.*

Joseph, father of S.P., testified at trial he was serving a twenty-year sentence for aggravated sexual assault of a child and was not parole-eligible until 2022. He also admitted to having been previously incarcerated for a sexual assault in 2001 and failure to register as a sex offender in 2005. When he testified about his relationship with S.P., he stated he had maintained communication with her but had "been away on and off from [S.P.] because of [his] mental illnesses and stuff." Joseph further denied all responsibility for not being around to protect S.P. from repeated sexual abuse.

Joseph echoes Christopher's arguments on appeal. Having addressed this argument, we similarly hold the evidence is sufficient to reasonably form a firm conviction or belief that termination of Joseph's parental rights is in S.P.'s best interest.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice